**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION**

**RICHARD KEVIN KLINE,**

**Petitioner,**

**v.** **Case No. 3:20cv4491-LC/MAF**

**STATE OF FLORIDA,**

**Respondent.**

**_________________________/**

## REPORT AND RECOMMENDATION

On March 5, 2020, Petitioner Richard Kevin Kline, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On August 24, 2020, Respondent filed an answer and exhibits. ECF No. 11. Petitioner filed a reply on April 27, 2021. ECF No. 14.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. The pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

By information filed October 28, 2014, in Escambia County Circuit Court case number 2014-CF-4593, the State of Florida charged Petitioner Richard Kevin Kline with second degree murder, in violation of section 782.04(2), Florida Statutes, in connection with events that occurred on or about September 30, 2014, to October 6, 2014, involving the death of Jolena Kline, Petitioner's wife. Ex. A at 1.[1] Kline proceeded to a jury trial which began April 4, 2016. Exs. B-C. Kline testified in his defense. Ex. C at 251-54, 258-94. On April 6, 2016, the judge declared a mistrial because the jury could not reach a unanimous verdict. Ex. C at 384.

On August 1, 2016, Kline again proceeded to a jury trial. Ex. E-G. Kline did not testify at the second trial. *See* Ex. F at 369-72. On August 3, 2016, the jury found him guilty as charged. Ex. A at 152; Ex. G at 476-78. On September 2, 2016, the court adjudicated him guilty and sentenced him to life in prison, with credit for time served since his arrest on October 15, 2014. Ex. A at 177-84 (judgment and sentence), 270; *id.* at 254-72

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 11.

(sentencing transcript).

Kline appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D16-4338.   Ex. A at 193; Ex. H.   The initial brief raised one point:   "The circuit court erred in denying [Kline's] motions for a judgment of acquittal at each trial."   Ex. H at i.   The State filed an answer brief.   Ex. I.   Kline filed a reply.   Ex. J.   In an opinion filed August 10, 2017, the First DCA affirmed Kline's judgment and sentence, explaining "the evidence singularly pointed to Appellant as the only possible suspect" and "the State's evidence was sufficient for the jury to find within 'a reasonable and moral certainty' that Appellant, and no one else, committed the charged offense."   Kline v. State, 223 So. 3d 482, 484, 487 (Fla. 1st DCA 2017); Ex. K.   The mandate issued August 31, 2017.   Ex. K.   Kline did not seek to invoke the discretionary jurisdiction of the Florida Supreme Court.

On April 25, 2018, Kline filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.   Ex. L at 9-56.   By order rendered October 26, 2018, the state post-conviction trial court summarily denied relief.   *Id*. at 57-73 (exclusive of attachments).   Kline

appealed and filed an initial brief, pro se, assigned case number 1D18-5324. Ex. M. The State did not file an answer brief. *See* Ex. N. The First DCA affirmed the case without a written opinion on December 11, 2019. Ex. O; Kline v. State, 285 So. 3d 302 (Fla. 1st DCA 2019) (table). The mandate issued on January 8, 2020. Ex. O.

As indicated above, Kline filed a § 2254 petition in this Court on March 5, 2020. ECF No. 1. He raises seven grounds, including six claims alleging ineffective assistance of counsel (IAC):

(1) **IAC – No Objection to Prosecutor Submitting Kline's Testimony from the First Trial**: "This is a 14th U.S.C.A. violation due to counsel's failure to object to the prosecution submitting a testimony from a previous trial," as "counsel failed to notify Mr. Kline that his testimony from his first trial would be used against him by the State in his second trial." ECF No. 1 at 9.

(2) **IAC – Plea Offer**: "This is a 14th U.S.C.A. violation due to counsel's failure for not properly advising Mr. Kline regarding the plea offer from the State," as he "was not aware of the reason why the State's original plea offer before his first trial increased after a mistrial in his first trial." *Id*. at 11. Kline states he "declined the State's increased plea offer before the second trial, due to defense counsel not informing [him] of the new evidence being presented in his second trial that was not in his first trial." *Id*.

(3) **IAC – No Motion to Suppress**: "This is a 14th U.S.C.A. violation due to counsel's failure to [file a] motion for the

suppression of evidence," where "[t]here was no search warrant obtained for the GPS location information of Mr. Kline's vehicle" and "[t]he information was given to law enforcement by a civilian without the permission of Mr. Kline." *Id*. at 13.   Kline asserts counsel should have sought to suppress "the evidence that was obtained illegally without a proper search warrant."   *Id*.

(4) **IAC – No Mental Health Expert**:   "This is a 14th U.S.C.A. violation due to counsel's failure to obtain a mental health expert for mitigating circumstances before, during, and after trial."   *Id*. at 15.   Kline asserts he "suffers from mental health issues and did not fully understand the legality of [the] plea offers or the evidence against him and no mental health experts were sought to help in the determination of any mitigating circumstances that could [have] been presented to the judge to assist at trial or at sentencing."   *Id*.

(5) **IAC – Failure to Investigate**:   "This is a 14th U.S.C.A. violation due to counsel's failure to investigate, cross-examine, and obtain expert witnesses that would [have] assisted the defense."   *Id*. at 18.   Kline asserts "there were multiple factions of favorable evidence that if defense counsel would [have] investigated, it would [have] proved Mr. Kline's innocence," such as "a third party's DNA that was never examined, fingerprints that were never obtained, and the failure of defense counsel to obtain witnesses or cross-examine witnesses that would [have] created reasonable doubt."   *Id*.

(6) **IAC – Cumulative**:   "This is a 14th U.S.C.A. violation due to counsel's cumulative deficiencies in representing the defendant."   *Id*. at 19.

(7) **Post-Conviction Court Error – No Evidentiary Hearing**:   "This is a 14th U.S.C.A. violation by lack of due process of

> law for a full criminal post-conviction review, when an evidentiary hearing was not granted." *Id*. at 20. Kline asserts "he was not given a full opportunity to present the factual findings of each of his grounds submitted in his post-conviction 3.850 due to not receiving an evidentiary hearing to build the face of the record to adequately address the defendant's grounds for relief," resulting in a violation of due process. *Id*. He further asserts, "Under Rule 12 of the Fed. R. Crip. P. due to not having a full opportunity to develop an argument before the court requires the submission of an evidentiary hearing to establish the validity of the defendant's claims." *Id*. In addition, the judge "did not state any findings of decisional law to support his denial of the post-conviction 3.850 motion" and the judge "must state U.S. Supreme Court law to which the State failed in its corrective process." *Id*.

Respondent filed an answer and exhibits. ECF No. 11. Petitioner Kline has filed a reply. ECF No. 14.

## **Analysis**

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For claims of ineffective assistance of counsel (IAC), the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

**Ground 1: IAC – Testimony from First Trial**

In his first ground, Petitioner Kline asserts defense counsel provided

ineffective assistance by not objecting during the second trial when the prosecution used Kline's testimony from the first trial.   ECF No. 1 at 9. Kline further asserts that defense counsel did not advise him his testimony from the first trial could be used in his second trial.   *Id*.

Kline raised this claim, or a substantially similar one, in state court as the first claim in his Rule 3.850 motion.   *See* Ex. L at 22; ECF No. 7 at 17. The state post-conviction trial judge summarily denied the claim, making the following findings:

> The Defendant claims that his counsel was ineffective for failing to object to the State introducing into evidence an audio recording of the Defendant's testimony at his first trial. Attachment 4, at 266-301.   The Defendant claims that audio recording was not "properly redacted" because it "notified the jury that Mr. Kline had previously been tried."   This claim is without merit.
>
> The Defendant's prior testimony was admissible.   State v. Billie, 881 So. 2d 637 (Fla. 3d DCA 2004); Barnes v. State, 970 So. 2d 332 (Fla. 2007) ("Both parties agree that the defendant's testimony from her first trial was, most assuredly, admissible in the retrial of the second-degree murder charge."); § 90.803(18), Fla. Stat.   Further, there is no explicit reference, in the recording, to the fact that the testimony was given at a jury trial. Attachment 4, 266-301.   The stipulation read to the jury was that the testimony was from a "previous hearing."   Attachment 4, at 267.
>
> Even if the jury was made aware that the Defendant testified at a prior *jury trial*, such a revelation alone did not deny Defendant a fair trial.   *See* Merck v. State, 664 So. 2d 939 (Fla.

1995) (trial court did not abuse discretion in denying motion for mistrial based upon an isolated reference to the first trial of the case). In other words, even if the Defendant is correct that the jury would have been able to discern the testimony was from a prior jury trial, the Defendant was not prejudiced within the meaning of Strickland. State v. Gavin, 360 N.W.2d 817, 819 (Iowa 1985) ("The substance of his argument seems to be that if jurors or members of a jury panel can be charged with the knowledge that the case before them is a retrial, then they must be presumed to be prejudiced. We do not agree.").

Furthermore, the State playing this recording did not interfere with the Defendant's right to choose whether to testify or remain silent. The Defendant chose to remain silent after the recording of the prior testimony had been introduced into evidence. Attachment 4, at 362, 369-372. The Defendant swore under oath that he had sufficient time to talk to his attorney about not testifying at trial, **no one had promised him a certain outcome as a result of not testifying**, that he understood that it was his decision whether to testify or not testify, and that it was his decision not [to] testify. Attachment 4, at 369-372.

In addition, the jury convicted the Defendant of second degree murder, even having considered the Defendant's account of events by virtue of hearing the Defendant's testimony from the first trial. Any claim that the jury would have reached a different result had the Defendant testified in person is speculative and not a sufficient basis for post-conviction relief.

The Defendant's reliance on Rolon v. State, 72 So. 3d 238 (Fla. 2d DCA 2011) is clearly misplaced. A second jury trial was conducted in this case because the first trial resulted in a hung jury. Motion, at page 3. Unlike in Rolon, the second trial in this case was not conducted due to the ineffective assistance of counsel in the first trial. The Defendant's first trial in this case was not tainted by a constitutional violation.

Ex. L at 61-62 (footnote omitted).

On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. A review of the state court record, and case law, supports the state courts' determination. *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

In particular, as the post-conviction court found, Kline's testimony from his first trial was admissible in his second trial. *See, e.g.,* Harrison v. U.S., 392 U.S. 219, 222 (1968) (explaining "the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings"); Barnes v. State, 970 So. 2d 332, 335 (Fla. 2007) ("Both parties agree that the defendant's testimony from her first trial was, most assuredly, admissible in the retrial of the second-degree murder charge."); State v. Billie, 881 So. 2d 637, 639 (Fla. 3d DCA 2004) (quoting Harrison, 392 U.S. at 222); § 90.803(18), Fla. Stat. (2014). Thus, defense counsel did not perform deficiently as any objection on this basis lacked merit. *See, e.g.*, Denson v. U.S., 804 F.3d 1339, 1342 (11th Cir. 2015)

(“Failing to make a meritless objection does not constitute deficient performance.”); Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008) (“Counsel cannot be deemed ineffective for failing to make a meritless objection.”); *see also, e.g.*, Oregon v. Elstad, 470 U.S. 298, 316-17 (1985) (“This Court has never embraced the theory that a defendant’s ignorance of the full consequences of his decisions vitiates their voluntariness. . . . Thus we have not held that the sine qua non for a knowing and voluntary waiver of the right to remain silent is a full and complete appreciation of all of the consequences flowing from the nature and the quality of the evidence in the case.”).

In addition, as the post-conviction court found, nothing in Kline’s testimony from the first trial explicitly indicates it was given at a jury trial. *See* Ex. F at 266-301. Indeed, during discussion among counsel and the trial judge, the prosecutor explains “we had to do the audio [only] because the video does not show Mr. Kline” and defense counsel adds that the video also “shows half the jury” from the first trial, at which point the prosecutor further explains that the video is “at an angle where you can see the jurors,” the prosecutor, and defense counsel, but not Kline. Ex. E at 382. Moreover, prior to the jury being sworn in the second trial, Kline

acknowledged on the record that his prior testimony would be presented:

> THE COURT:   Mr. Kline is present.   And any other preliminary matters we need to take care of?
>
> MS. JENSEN [prosecutor]:   No.   Judge, the reason I gave the Court the stipulations earlier because I didn't know if you wanted to colloquy Mr. Kline that he signed those and was agreeable.
>
> THE COURT:   Okay.   I'll go ahead and do that.
>
> All right.   Mr. Kline, raise your right hand for me.
>
> (Witness sworn)
>
> THE COURT:   All right.   Mr. Kline, there have been some stipulations that have been signed by Ms. Jensen, Mr. Dunkerley, and it looks like yourself.   And the first stipulation is that the deceased person located on October 8th, 2014, at 220 Corrydale Drive is the same person that Dr. Andrea Minyard performed an autopsy on October 10th, 2014; number two, the body located on October 8, 2014, and autopsied on October 10th, 2014, is that of Jolena Kline; and number three, identification of the deceased in Count 1 is Jolena Kline.
>
> You agree to those stipulations?
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:   Okay.   You understand that I'll read those to the jury?
>
> THE DEFENDANT:   Yes, sir.
>
> THE COURT:   All right.   And, **Mr. Kline, it looks like also that at some point in time the State may play former testimony given by you that was sworn; and at that point in time, I will read the stipulation that, "The following exhibit contains**

> **sworn testimony taken from the Defendant Richard Kline at a previous hearing."   Any objections to that stipulation?**
>
> THE DEFENDANT:   **No, sir.**
>
> THE COURT:   Okay.   All right.   So I've got that on the record.

Ex. E at 98-99 (emphasis added); *see id*. at 122, Ex. F at 267.   Thus, as the post-conviction court found, the parties' stipulation, read to the jury, stated the testimony was from a "previous hearing."   Ex. L at 267; *see* Ex. F at 267. The court read the stipulation just prior to State's playing of the audio of Kline's testimony from his first trial.   Ex. F at 267.

In addition, after the State rested, defense counsel indicated Kline did not wish to testify.   Ex. F at 369.   The judge questioned Kline about his decision, and then found it was knowingly and voluntarily made:

> THE COURT:   Okay.   Let me do the colloquy with him and discuss how we'll want to proceed.
>
> Mr. Kline, if you would raise your right hand for me.
>
> (Defendant sworn)
>
> THE COURT:   Mr. Kline, my understanding is you do not wish to testify today; is that correct?
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   Have you had sufficient time to talk to your attorney about this decision?

THE DEFENDANT:   Yes.

THE COURT:   Has he explained to you the pros and cons about not testifying?

THE DEFENDANT:   Yes.

THE COURT:   Has he explained to you the pros and cons about testifying?

THE DEFENDANT:   Yes.

THE COURT:   Mr. Kline, do you understand that if you wanted to testify, you could testify?   We'll allow you to come up here and come to the witness stand and you could answer questions from your attorney, and you would also be subject to cross-examination from the State; do you understand that?

THE DEFENDANT:   Yes.

THE COURT:   Mr. Kline, has anybody forced you not to testify today?

THE DEFENDANT:   No, sir.

THE COURT:   Anybody made you any promises to get you to not testify today?

THE DEFENDANT:   No.

THE COURT:   Anybody promised you a certain outcome as the result of you not testifying today?

THE DEFENDANT:   No.

THE COURT:   Anybody promised you an outcome if you did testify?

THE DEFENDANT:   No.

THE COURT:   Mr. Kline, have you had any drugs or alcohol in the last 24 hours?

THE DEFENDANT:   No, sir.

THE COURT:   And you understand what is happening here today, correct?

THE DEFENDANT:   Yes.

THE COURT:   And you are able to listen to all the testimony that's been presented today and yesterday; is that correct?

THE DEFENDANT:   Yes, sir.

THE COURT:   And has your attorney answered all of your questions about whether or not you should testify or not?

THE DEFENDANT:   Yes, sir.

THE COURT:   Okay.   Was there any prior convictions he could be impeached on?

MS. JENSEN:   No, sir.

THE COURT:   Okay.   And you understand that there were going to be no prior convictions or crimes of dishonesty that you could be impeached on if you were to take the stand?

THE DEFENDANT:   Yes.

THE COURT:   Mr. Kline, do you understand the decision to testify or not to testify is your decision, is your decision; it's not a decision that your attorney makes for you?

THE DEFENDANT:   Yes.

> THE COURT: Okay. Do you have any other questions at this time about this decision?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Okay. And it is your decision not to testify in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. I am going to find his – oh, a couple of other questions. How far did you go in school, Mr. Kline?
>
> THE DEFENDANT: Twelfth. High school.
>
> THE COURT: Did you graduate from high school?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And you also served in the U.S. Navy for 17 years; is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you are not on any kind of psychiatric medications at this time?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Okay. I am going to find his decision to testify is done knowingly, voluntarily, and is freely done, so we'll have that part of the – the not testifying part of jury instruction will be inserted. . . .

Ex. F at 369-72; *see* Ex. G at 446 (portion of jury instruction). Thus, the state court record also supports the post-conviction judge's findings that Kline

freely chose not to testify at the second trial and made that informed choice after the State had played his previous testimony.

At the first trial, when Kline decided to testify, the judge made a similar inquiry and found his decision to testify was knowingly and voluntarily made:

> THE COURT: Okay. All right. All right. Mr. Kline, my understanding is that you are going to testify today; is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you had sufficient time to talk to your attorney about this decision?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has he answered all of your questions about this decision?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has he explained to you the pros and cons about testifying?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has he also explained to you the pros and cons about not testifying?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that if you do not testify, I would give the jury an instruction that they could not use that against you, and that they should not consider the fact that you did not take the witness stand. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Mr. Kline, how far did you go in school?

THE DEFENDANT: I graduated high school in ’88.

THE COURT: All right. Do you read and write the English language?

THE DEFENDANT: Read and write, yes.

THE COURT: Okay. Have you had any drugs or alcohol in the last 24 hours?

THE DEFENDANT: No, sir.

THE COURT: Are you on any psychiatric medications?

THE DEFENDANT: No, sir.

THE COURT: Do you understand what is going on here today?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Do you understand that when you take the witness stand, you will be able to answer your attorney’s questions, but that will also mean you are cross-examined by the State? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Has anybody forced you to testify today?

THE DEFENDANT: No, sir.

THE COURT: Anybody coerced you to testify today?

THE DEFENDANT:   No, sir.

THE COURT:   All right.   Mr. Kline, do you understand the decision to testify or not to testify is your decision, it's not a decision your attorney makes for you?   Do you understand that?

THE DEFENDANT:   Yes.

THE COURT:   And is this what you want to do today, testify?

THE DEFENDANT:   Yes.

THE COURT:   Okay.   Do you have any other questions about this decision?

THE DEFENDANT:   No, sir, I don't.

THE COURT:   Okay.   And you're satisfied with the advice that you've been given by your attorney on this matter; is that correct?

THE DEFENDANT:   Yes.

THE COURT:   Okay.   And so your decision is to testify today; is that correct?

THE DEFENDANT:   Yes, sir.

THE COURT:   Okay.   I'm going to find his decision to testify is done knowingly, voluntarily, and done freely.

Ex. C at 251-54.

Petitioner Kline has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See*

28 U.S.C. § 2254(d)(1)-(2). Accordingly, if considered on the merits, this ground should be denied.

**Ground 2: IAC – Plea Offer**

In his second ground, Petitioner Kline asserts defense counsel provided ineffective assistance by not properly advising him regarding the State's plea offer before the second trial. ECF No. 1 at 11. Particularly, Kline asserts defense counsel did not inform him that the plea offer had increased because "of the new evidence being presented in his second trial that was not in his first trial." *Id*.

Kline raised this claim, or a substantially similar one, in state court as the second claim in his Rule 3.850 motion. *See* Ex. L at 29; ECF No. 7 at 25. The state post-conviction trial judge summarily denied the claim, making the following findings:

> The Defendant claims that his counsel was ineffective for "failing to properly advise Mr. Kline regarding the plea offer from the State." As the United States Supreme Court has explained, "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). The Defendant is not entitled to post-conviction relief on this ground.
>
> . . . .
>
> The Defendant also complains that his counsel did not "properly explain" the "strength of the State's case, especially the

second time around." This contention is without merit. As the Defendant notes in his motion, the evidence at both the first and second trial "was essentially the same." Motion, at page 3. Thus, the Defendant cannot legitimately claim to have been unaware of the "strength of the State's case" after being present during his first trial.

Counsel would not be deficient simply because he stated that he "could win" at trial. Millan v. State, 55 So. 3d 694 (Fla. 3d DCA 2011). In addition, in this case, a statement by defense counsel that he or she "could win" would not be unreasonable. The evidence of the Defendant's guilt could not be characterized as overwhelming. The Defendant's first trial resulted in a hung jury. Compare, Flint v. State, 184 So. 3d 610 (Fla. 2d DCA 2016) ("Mr. Flint now contends that trial counsel's confidence in a favorable verdict and advice to reject the plea offer were unreasonable because "there was overwhelming physical and testimonial evidence against him.").

The Defendant raises other claims of alleged deficiency as to this ground, but the Court need not address any claim of deficiency. The record conclusively refutes any claim of prejudice.

To establish prejudice regarding a claim of deficiency of counsel during the plea bargaining process, "the defendant must allege and prove a reasonable probability, defined as a probability sufficient to undermine the outcome, that **(1) he or she would have accepted the offer had counsel advised the defendant correctly,** (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Alcorn v. State, 121 So. 3d 419, 430 (Fla. 2013) (emphasis added).

Regarding the plea offer at issue, the record conclusively shows that the Defendant had no interest in accepting it. The

transcript of the plea proceedings on July 15, 2016, shows the following:

| | |
|---|---|
| Mr. Dunkerley: | **And let me just put this on the record real quick**. I talked to Mr. Kline in the box. We've discussed the possibility of – of trying to make an offer to the State. We were – he scores, roughly, 20 1/2 years state prison and they were wanting to play with the points to get it down to the 13-year range, but were talking about the possibility of [a floor of] 15 and a [ceiling] of 25, plea to that.<br><br>Mr. Kline is not interested in any of that, so at this point I've – I've discussed with him that we're going to cease negotiations. And unless he brings it back up to me, we're just going to try it on August 1st. |
| The Court: | **Is that correct, Mr. Kline?** |
| The Defendant: | **Yes, sir.** |
| The Court: | Okay. All right. |

<u>Attachment 5</u>, at 3 (emphasis added).

In this case, the Defendant clearly indicated on the record his agreement that he was **"not interested in any of that."** In other words, the record shows that the Defendant was not interested in a plea agreement with the State, causing counsel to "cease negotiations." A plea of guilty or nolo contendere must be voluntary. Fla. R. Crim. P. 3.172(a). In addition, a defense counsel has a duty to avoid coercing a plea from an unwilling client. <u>Purdy v. U.S.</u>, 208 F. 3d 41, 47 (2d Cir. 2000). Thus, the record demonstrates that the Defendant did not suffer prejudice regarding counsel's performance during the plea

> bargaining process, because the Defendant was "not interested" in the State's plea offer. The Court would also note that the Defendant's claim that the offer "very well would have gotten better" because of the Defendant's mental health issues is purely speculative.

Ex. L at 62-65 (footnote omitted). On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. The record supports the state courts' determination. *See* Wilson, 138 S. Ct. at 1192.

In particular, the record supports the state post-conviction court's finding that Kline had no interest in accepting a plea offer. As that court explained, the state court record includes a hearing on July 15, 2016, during which defense counsel put on the record that Kline "is not interested" in any plea and therefore defense counsel was "going to cease negotiations." Ex. A at 251. Defense counsel also stated that unless Kline brought the plea issue up again to him, they would proceed to the second trial on August 1. *Id*. The court asked Kline if that was correct and Kline answered on the record, "Yes, sir." *Id*. Thus, as the state post-conviction court concluded, Kline cannot show he suffered any prejudice regarding counsel's performance during the plea bargaining process as he cannot show he would have accepted a plea. *See* Lafler, 566 U.S. at 164 (clarifying that Sixth

Amendment right to effective assistance of counsel extends to negotiation and consideration of plea offers that lapse or are rejected, and concluding that, to establish prejudice, defendant must show reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed").

Petitioner Kline has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this claim should be denied.

**Ground 3: IAC – No Motion to Suppress**

In his third claim, Petitioner Kline asserts defense counsel provided ineffective assistance because he did not file a motion to suppress "evidence that was illegally obtained without a proper search warrant," where "[t]here was no search warrant obtained for the GPS location information of Mr. Kline's vehicle" and "[t]he information was given to law enforcement by a

civilian without the permission of Mr. Kline." ECF No. 1 at 13. Kline raised this claim, or a substantially similar one, in state court as the fifth claim in his Rule 3.850 motion. *See* Ex. L at 41-47; ECF No. 7 at 32. The state post-conviction trial judge summarily denied the claim, making the following findings:

> The Defendant claims that his counsel was ineffective for failing to file a motion to suppress evidence from the scene of the crime. The Defendant asserts that his counsel was ineffective for not filing a motion to suppress because there "was never a search warrant obtained to seize, analyze, or obtain the GPS information during the arrest of Mr. Kline." This claim is without merit.
>
> The evidence is clear that the "GPS information" was voluntarily printed out and provided to law enforcement by Ms. Babcock, on her own initiative. Attachment 4, at 214-217. In other words, law enforcement did not conduct a "search" or a "seizure" to obtain this information. Therefore, there is no possible Fourth Amendment violation. Bateh v. State, 208 So. 2d 846, 848 (Fla. 1st DCA 1968) ("the information gained by the motel manager and passed on by him to officers of the State is not within the ambit of protection provided by the Fourth Amendment to the United States Constitution is evident when we note the cases holding that the amendment only proscribes governmental action and does not require exclusion of evidence obtained by a private citizen"). The Fourth Amendment [is] "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109, 113 (1984) (citation omitted).

*Id*. at 68. On appeal, the First DCA affirmed without an opinion, an

adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. The record supports the state courts' determination. *See* Wilson, 138 S. Ct. at 1192.

In particular, the record supports the state post-conviction court findings that the GPS information was voluntarily provided to law enforcement by Alexindria Babcock, on her own initiative, and thus law enforcement did not conduct a search to obtain that information. Specifically, Babcock testified at Kline's trial that she worked at Butler Auto Resources in October 2014 and she knew Kline had bought a vehicle, a 2008 Chevy Cobalt equipped with GPS. Ex. F at 215. She explained that "[i]f you're financing, they all get a GPS put in them." *Id*. at 216. She testified regarding how the GPS worked:

> Q. And how did the GPS work with Butler Auto?
>
> A. Once it's installed, it will track itself every 24 hours unless you go in and want to see where that car is, you can track it yourself.
>
> Q. And how would you get the information? In other words, did it come on a computer? How would you see it?
>
> A. You log in to the website through the Internet and you can look up all the names.
>
> Q. Were you able to print that information if you needed to?

A.   Yes, you can.

She further testified regarding how she contacted law enforcement about

Kline:

Q.   Now, back in that time, again, October of 2014, did you
become aware of that law enforcement was looking for your
customer, Richard Kline?

A.   Yes, I did.

Q.   How was that?

A.   I was going to bed one night and my boyfriend was watching
the news, and it come across the TV.

Q.   When you saw Mr. Kline, did you recognize him?

A.   Yes.

Q.   Did you get in touch with the sheriff's office?

A.   Yes, I did.

Q.   Did you provide GPS location information for that Chevy
Cobalt?

A.   Yes.

Q.   And starting from October 3rd of 2014 through October 12th,
what states did the Chevy Cobalt travel through?

A.   It went from Florida to Georgia to Tennessee.

Q.   Did you print that information and provide it to the sheriff's
office?

A.   Yes.

*Id*. at 216-17.   On cross, Babcock testified that Kline was informed there was a GPS tracking device on the car when he bought it.   *Id*. at 217.   *See* Ex. C at 272 (Kline's testimony from first trial that he knew there was a tracking device on his car).

Because Babcock voluntarily provided the GPS information to law enforcement, no Fourth Amendment violation occurred and defense counsel did not perform deficiently by not filing a motion to suppress on that basis. *See* Bateh v. State, 208 So. 2d 846, 848 (Fla. 1st DCA 1968) (explaining "the information gained by the motel manager and passed on by him to officers of the State is not within the ambit of protection provided by the Fourth Amendment to the United States Constitution is evident when we note the cases holding that the amendment only proscribes governmental action and does not require exclusion of evidence obtained by a private citizen"). The U.S. Supreme Court has "consistently construed" the Fourth Amendment protection against unreasonable searches and seizures "as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge

of any governmental official.'" United States v. Jacobsen, 466 U.S. 109, 113 (1984) (quoting Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).

Petitioner Kline has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this claim should be denied.

**Ground 4: IAC – No Mental Health Expert**

In his fourth claim, Petitioner Kline argues defense counsel provided ineffective assistance by not obtaining "a mental health expert for mitigating circumstances before, during, and after trial." ECF No. 1 at 15. He asserts he has "mental health issues and did not fully understand the legality of [the] plea offers or the evidence against him and no mental health experts were sought to help in the determination of any mitigating circumstances that could [have] been presented to the judge to assist at trial or at sentencing." *Id*.

Kline raised this claim, or a substantially similar one, in state court as the third and fourth claims in his Rule 3.850 motion. *See* Ex. L at 33-38,38-41; ECF No. 7 at 36. The state post-conviction trial judge summarily denied those claims, making the following findings:

Ground Three

The Defendant claims that his attorney was ineffective for failing to raise a "mental health defense." The Defendant claims this was his "only viable defense." This claim is without merit.

"Florida does not recognize a diminished capacity defense." Thompson v. State, 88 So. 3d 312, 321 (Fla. 4th DCA 2012). Accordingly, any evidence of diminished capacity would be inadmissible. "When a court rejects the doctrine of diminished capacity, it is saying that psychiatric evidence is inadmissible on the *mens rea* issue." Muench v. Israel, 715 F.2d 1124, 1143 (7th Cir. 1983); *see also* Beckman v. State, 230 So. 3d 77 (Fla. 3d DCA 2017) (holding that evidence that the defendant has Asperger's syndrome for the purpose of proving that the defendant did not have premeditated intent to kill was inadmissible). The Florida Supreme Court has instructed:

> It could be said that many, if not most, crimes are committed by persons with mental aberrations. If such mental deficiencies are sufficient to meet the definition of insanity, these persons should be acquitted on that ground and treated for their disease. **Persons with less serious mental deficiencies should be held accountable for their crimes just as everyone else.** If mitigation is appropriate, it may be accomplished through sentencing, but to adopt a rule which creates an opportunity for such persons to obtain immediate freedom to prey on the public once again is unwise.

Chestnut v. State, 538 So. 2d 820, 825 (Fla. 1989) (emphasis added).

As to any claim that counsel should have pursued a defense based on insanity, such a claim is entirely without merit. Insanity is an affirmative defense. Cotto v. State, 89 So. 3d 1025 (Fla. 3d DCA 2012); § 775.027, Fla. Stat. The standard

jury instruction on insanity provides, in relevant part, "**If you find that (defendant) committed the crime** but you find by clear and convincing evidence that the defendant was insane, then you should find [him] not guilty by reason of insanity." Fla. Std. Jury Inst. 3.6(a) (Crim) (emphasis added). It was plain that the Defendant's strategy at trial was to argue that the State's evidence was insufficient to prove the Defendant killed Jolena Kline. Attachment 4, at 426-445. For the Defendant to pursue an insanity defense, the Defendant would essentially have to concede that he killed his wife. "Acquittal by reason of insanity imports a finding that the conduct with which the defendant was charged actually occurred." Brown v. State, 994 So. 2d 480, 482 (Fla. 1st DCA 2008).

The Defendant testified at [his] first trial that he did not kill his wife. Attachment 4, at 285. The Defendant's sworn testimony was entirely inconsistent with a claim that he was legally insane at the time his wife was murdered. Attachment 4, at 266-301. Thus, in order to claim that his counsel was ineffective for failing to pursue an insanity defense, the Defendant would have to admit that he lied under oath when he testified at his first trial. The Second District Court of Appeal has recognized that "a defendant should be estopped to receive an evidentiary hearing on a postconviction claim when the basis of the claim is that he lied under oath at the relevant hearing." Polk v. State, 56 So. 3d 804, 808 (Fla. 2d DCA 2011).

Ground Four

The Defendant's counsel was not ineffective for failing to introduce evidence of the Defendant's mental health issues at sentencing. The Defendant did not wish to give any testimony at sentencing. Attachment 6, at pages 4, 16. At that point, it appears the Defendant was maintaining his innocence. Thus, it seems unlikely the Defendant would have consented to any mitigation evidence or argument that would be either an explicit, or tacit, admission to his involvement in the murder of his wife. At that stage, it was possible the Defendant would prevail on

> appeal. "An attorney will not be deemed ineffective for honoring his client's wishes." Brown v. State, 894 So. 2d 137, 146 (Fla. 2004).
>
> However, the Court need not determine whether counsel was deficient, because the Defendant cannot establish Strickland prejudice as to this claim. A pre-sentence investigation ("PSI") was ordered in this case. Attachment 7. The PSI demonstrates that the Defendant's physical health was "poor." Moreover, the PSI reflects that, although the Defendant had experienced depression in the past, the "Defendant denies any current mental health issues." Furthermore, the Court was aware of the defendant's prior mental and physical health issues in that they were discussed in the Defendant's testimony from the *first trial*. Attachment 4, at 266-301. Nevertheless, despite the Court's knowledge of the Defendant's mental and physical issues, the undersigned Circuit Court Judge determined that a life sentence, the statutory maximum for second degree murder, was warranted for the murder of Jolena Kline.

*Id*. at 65-67.

On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. The record supports the state courts' determination. *See* Wilson, 138 S. Ct. at 1192.

In particular, the record supports the state post-conviction court's finding that any defense based on an alleged mental health issue would be contrary to Kline's testimony, at the first trial, that he did not kill his wife. *See* Ex. C at 268, 277, 281. Indeed, as that court explained, insanity constitutes

an affirmative defense and, if Kline wanted to pursue such defense, he would have to concede he had killed his wife. *See* § 775.027, Fla. Stat. At both trials, however, the defense strategy was to argue the State's evidence was insufficient to prove Kline had killed his wife. *See* Ex. C at 232-40, 312-31; Ex. F at 363-65; Ex. G at 426-45. Thus, to claim that his counsel was ineffective for failing to pursue an insanity defense, the Defendant would have to admit that he lied under oath when he testified at his first trial. *See, e.g.*, Reed v. State, 875 So. 2d 415, 432 (Fla. 2004) (citing Strickland and stating, "[W]here counsel has reason to believe pursuing certain lines of defense would be fruitless or even harmful, counsel does not act unreasonably in not pursuing them.").

Petitioner Kline has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this claim should be denied.

In his reply, Petitioner Kline appears to change his claim. *See* ECF No. 14 at 5. He asserts "this ground was meant to evaluate the Petitioner's 'state of mind' that pertained to him going to commit suicide and his strange behavior up to the time that [he] was arrested." *Id*. He further asserts, "If

the Petitioner would have been evaluated and assessed by a mental health expert, they could have explained to the jury why someone suffering from a mental disorder would be acting the way the petitioner did, looking for work and essentially planning on committing suicide by using a semi-truck to fulfill his suicidal quest." *Id*. This is not the claim Kline presented in his Rule 3.850 proceeding, *see* Ex. L at 33-41, addressed by the state courts, and thus it is unexhausted and procedurally defaulted. *See* O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."); *see also, e.g.*, McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (explaining exhaustion requirement: "[T]o ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."). This claim is not properly before this Court and should not be considered. *See, e.g.*, Tyler v. Mitchell, 416 F.3d

500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."); Thomas v. McDonough, 4:07cv473–MP/EMT, 2010 WL 3491156 at *5 (N.D. Fla. Sept. 2, 2010) (district judge order adopting report and recommendation that petitioner did not properly raise claim regarding lack of notary seal on probable cause affidavit supporting arrest warrant where petitioner raised claim for first time in reply brief filed after Respondent's answer); Klauer v. McNeil, No. 3:07cv541–LAC/EMT, 2009 WL 2399928 at *30 (N.D. Fla. July 31, 2009) (district judge order adopting report and recommendation that petitioner did not properly raise claim in federal habeas proceeding where petitioner raised it for first time in reply to Respondent's answer, and petitioner could not amend petitioner "as a matter of course" because Respondent had already served answer, petitioner did not seek leave of court to amend petition, and reply expressly states intent that document be deemed reply to answer).

**Ground 5: IAC – Failure to Investigate**

In his fifth claim, Petitioner Kline asserts defense counsel provided ineffective assistance by failing "to investigate, cross-examine, and obtain

expert witnesses that would [have] assisted the defense."   ECF No. 1 at 18.

Kline raised this claim, or a substantially similar one, in state court as the

sixth claim in his Rule 3.850 motion.   *See* Ex. L at 47-51; ECF No. 7 at 43.

The state post-conviction trial judge summarily denied the claim, making the

following findings:

> In this ground, the Defendant raises a myriad of claims. None have merit.
>
> The Defendant challenges the manner in which his counsel cross-examined the State's witnesses.   This conclusory claim fails because "the manner in which counsel cross-examines a particular witness is a strategic choice and therefore 'virtually unchallengeable.'" Kessler v. Cline, 335 Fed. Appx. 768, 770 (10th Cir. 2009) (quoting Strickland, 466 U.S. at 690). Moreover, the Defendant's strategy at trial is apparent from the face of the record. The Defense sought to challenge the sufficiency of the State's evidence.   Attachment 4, at 426-445.
>
> This strategy was plainly reasonable.   As noted above, the first trial resulted in a mistrial due to a hung jury.   Counsel was able to bring out on cross-examination the presence of a third party's DNA on the victim's bracelet.   Attachment 4, at 181.   On direct appeal, the First District Court of Appeal issued a detailed written opinion explaining why the State's evidence of guilt was legally sufficient.   Clearly, the appellate court concluded that issue was worthy of discussion.
>
> The Defendant faults his counsel for not consulting expert witnesses.   However, defense counsel is not required in every instance to retain an expert.   Leonard v. State, 930 So. 2d 749 (Fla. 2d DCA 2006).   As the United States Supreme Court has explained:

> Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both. There are, however, countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach.

Harrington v. Richter, 562 U.S. 86, 106 (2011) (citations and quotations marks omitted).

In this case, when counsel's strategy was to challenge the sufficiency of the evidence, it was not unreasonable not to consult an expert to testify to the Defendant's "physical abilities after having a heart attack." The medical examiner was not able to determine an exact cause of death due to the decomposition of the victim's body. Attachment 4, at 347. The medical examiner opined that the victim died from an "asphyxia event." Id. at 351-353. Dr. Minyard explained that she could not "pinpoint whether it was manual strangulation with the hands or a fight with strangulation **or someone just sitting on another person during the fight.**" Id. at 355-356 (emphasis added).

Even if counsel could have presented evidence showing the Defendant had limited physical abilities, there is no reasonable probability that an expert could testify that the Defendant was incapable of suffocating his wife by sitting on her chest during a struggle. Given the Defendant's large physical size and the likely result of a man of such size sitting on a woman of the size of the victim, the Defendant was not prejudiced within the meaning of Strickland due to the lack of evidence of the Defendant's "physical capabilities." Given the Defendant's large size, only limited physical capability would be necessary to suffocate the victim, particularly if the attack was not expected. Attachment 4, at 411 (Portion of prosecutor's closing argument).

It should be noted that  the Defendant was well enough in his physical condition to pack his  car with his  belongings and travel to Georgia, and then to Tennessee.   Attachment 4, at 270-273.   According to the Defendant's account, he was well enough that he was looking for work as a truck driver in October of 2014. The Defendant's trial counsel was not ineffective not investigating this defense based on the Defendant's physical abilities.

The Defendant is not entitled to relief on his claim counsel should have "obtained a[n] expert to determine if FDLE dusted for finger prints."   The Defendant claims that "if there were any other finger prints," that "could have brought doubt to the jury's decision."   The Defendant's claim of possible fingerprints of a third  party  at  the  Defendant's  home  is  pure  speculation. Furthermore, the State's lack of fingerprint evidence was relied on by counsel in his closing argument.   Attachment 4, at 430, 433, 439.   Finally, the mere existence of a fingerprint of a third party being present at the home would not, by itself, undermine the confidence in the jury's verdict.

In addition, counsel could not show that the Defendant "was not running" by introducing bank records.   Such a claim is meritless.   The evidence that the Defendant left the area is beyond dispute; the Defendant was arrested in Tennessee. The Defendant's car was packed with his belongings.   In addition, the evidence regarding the regular payment of rent was before the jury.   Attachment 4, at 327-332.   The Defendant withdrew more money than was necessary to pay the rent.   See Attachment 4, at 270, lines 14-16.   The Defendant was not prejudiced due to his counsel not admitting bank records to show his rental payments.   See also, Motion, at page 11.

Counsel was not ineffective for not presenting evidence that the victim had "multiple [drug] dealers coming to the house," and sold "her prescription pills," and was "addicted" to "prescription pain pills."   Even presuming *arguendo* such evidence would have been admissible despite its apparent lack of relevancy, there is no reasonable probability that the jury would have reached a different result had such evidence been presented.   Evidence of the victim's  illegal drug activity does not exculpate the Defendant.

> The Defendant's contention that his counsel was ineffective for failing to mov[e] to have "the jury in a hotel, to assure that there would be no outside influence" is without merit. Counsel was not deficient for not making such a motion merely because the case was "high profile." See Fla. R. Crim. P. 3.370. In addition, any claim of prejudice as to such an assertion is impermissibly speculative. Attachment 4, at 89, 103, 107-108, 196-197, 208-209, 375, 409.
>
> Finally, the Defendant's counsel was not ineffective for not challenging the admissibility of evidence recovered from the Defendant's car. The Defendant claims that the vehicle was not "secured" prior to being "moved by a civilian tow truck driver." However, relevant physical evidence is admissible unless there is an indication of probable tampering. State v. Jones, 30 So. 3d 619 (Fla. 2d DCA 2010). Counsel was not ineffective move to exclude evidence simply because the Defendant's car was "moved by a civilian tow truck driver."

Ex. L at 68-72. On appeal, the First DCA affirmed without a written opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. The record supports the state courts' determination. *See* Wilson, 138 S. Ct. at 1192.

Petitioner Kline does not appear to raise a serious challenge to the state courts' denial of this multi-part claim. *See* ECF No. 1 at 18. Indeed, his "supporting facts" section states only the following:

> There was multiple factions of favorable evidence that if defense counsel would [have] investigated, it would [have] proved Mr. Kline's innocence. As set forth a third party's DNA that was never examined, fingerprints that were never obtained, and the failure of defense counsel to obtain witnesses or cross-examine witnesses that would [have] created reasonable doubt.

*Id*.   Similarly, Respondent does not provide any meaningful, substantive analysis of this ground; rather, Respondent quotes the state post-conviction court's findings, sets forth the standards of review (the same as under all the grounds), and then merely concludes, "Petitioner cannot establish that the state courts' denial of relief was contrary to or an unreasonable application of Strickland or that it rest upon an unreasonable determination of the facts in light of the evidence presented."   ECF No. 11 at 42-60.   In his reply, Petitioner points out Respondent's "clear boilerplate, standard adoptive response."   ECF No. 14 at 6.

At bottom, from his reply, Petitioner's chief concern in this ground is that "the [S]tate's evidence was circumstantial at best" and "is insufficient to sustain a conviction."   ECF No. 14 at 6.   He asserts he "has demonstrated a prima facia case of innocence" and demands a new trial.   *Id*.

As the state post-conviction court found, supported by the record, and as explained in the analysis of Ground 4, *supra*, the defense strategy was to challenge the sufficiency of the State's evidence.   *See* Ex. G at 426-445. The state court properly concluded this strategy was "plainly reasonable," pointing out that the first trial ended in a mistrial because the jury could not reach a unanimous verdict.   Defense counsel cross-examined witnesses

and, in particular, elicited testimony from the forensic DNA analyst on cross regarding the presence of a third party's DNA and that Kline's DNA was not found on any of the samples she received for testing. Ex. E at 181-82. As the state post-conviction court found, defense counsel defense counsel is not always required to retain an expert. *See, e.g.*, Richter, 562 U.S. at 106; Leonard v. State, 930 So. 2d 749 (Fla. 2d DCA 2006). Moreover, as the state post-conviction trial court explained, in Kline's direct appeal, the First DCA issued a detailed written opinion explaining why the State's evidence was legally sufficient. *See* Kline v. State, 223 So. 3d 482 (Fla. 1st DCA 2017).

Petitioner Kline has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this claim should be denied.

**Ground 6: IAC – Cumulative Error**

In his sixth ground, Petitioner Kline argues he is entitled to habeas relief based on "cumulative deficiencies" by trial counsel. ECF No. 1 at 19. Kline raised this ground as the seventh claim in his Rule 3.850 motion. Ex. L at 51-52; *see* ECF No. 11 at 50. The state post-conviction court denied

the claim, making the following findings:

> The Defendant raises a claim of cumulative error of counsel. However, the Court finds that the Defendant's individual claims are without merit. Indeed, the Defendant has not demonstrated that any meaningful legal error occurred in the Defendant's trial or sentencing. Thus, the Defendant's claim of cumulative error fails. Griffin v. State, 866 So. 2d 1 (Fla. 2003); London v. Dubrovin, 165 So. 3d 30 (Fla. 3d DCA 2015). The Defendant has not shown he was denied his right to a fair trial. Michigan v. Tucker, 417 U.S. 433, 446 (1974) ("[T]he law does not require that a defendant receive a perfect trial, only a fair one . . . .").

Ex. L at 72. On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. The record supports the state courts' determination. *See* Wilson, 138 S. Ct. at 1192.

Petitioner Kline has not shown the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). Indeed, the Eleventh Circuit has rejected an argument of cumulative error in the context of IAC claims. *See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 564-65 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of

counsel claim" and "the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'"). Moreover, as the state court explained, because each individual ground fails, this ground likewise fails and should be denied. *See, e.g.*, Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative trial court error as "none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"); *accord, e.g.*, United States v. Chalker, 966 F.3d 1177, 1193-94 (11th Cir. 2020).

**Ground 7: Post-Conviction Court Error – No Evidentiary Hearing**

In his seventh claim, Petitioner Kline asserts he is entitled to habeas relief because he was denied due process by the state post-conviction court summarily denying his Rule 3.850 motion. ECF No. 1 at 20. He concedes he did not raise this claim in state court and, thus, it is not exhausted. *See id*. at 17; *see* ECF No. 11 at 56.

As Respondent indicates, this claim asserts a defect in a state collateral proceeding. *See* ECF No. 11 at 57. As such, it is not cognizable in federal habeas. *See, e.g.*, Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354,

1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief. . . . The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment – i.e., the conviction itself – and thus habeas relief is not an appropriate remedy. . . . Because of this bar to relief, we have stated it is 'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief."). *See also* Anderson v. Sec'y for Dept' of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987). Accordingly, this ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Richard Kevin Kline is not entitled to federal habeas relief. The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on July 15, 2021.

**S/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**